**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENSYLVANIA**

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of all others similarly situated, | : | CIVIL ACTION FILE NO. _________ |
| Plaintiff, | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| FIRST CALL SOLUTIONS, LLC, INFOWORX DIRECT, LLC and QUOTEWIZARD.COM, LLC | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

Plaintiff Stewart Abramson individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows.

## NATURE OF ACTION

1. This case involves a campaign by QuoteWizard.com, LLC (“QuoteWizard”) whose agents First Call Solutions, LLC (“First Call”) and Infoworx Direct, LLC (“Infoworx”) made telemarketing calls to market QuoteWizard’s goods and services by initiating telemarketing calls to residential telephone numbers using a prerecorded or artificial voice in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the “TCPA”).

2. The recipients of Defendants’ illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by Defendants makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

3. Plaintiff Stewart Abramson (hereinafter referred to as "Plaintiff" or "Mr. Abramson"), is an individual who reside in Pittsburgh, Pennsylvania.

4. Defendant First Call Solutions, LLC. is a ("First Call") is a limited liability company formed under the laws of Connecticut and headquartered in Houston, Texas.

5. Defendant Infoworx Direct, LLC ("Infoworx") is a limited liability company formed under the laws of Florida and headquartered in Boca Raton, Florida.

6. QuoteWizard.com, LLC ("QuoteWizard") is a limited liability formed under the laws of Delaware and headquartered in Seattle, Washington.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227 *et seq*.

8. This Court has personal jurisdiction over the Defendants because their conduct was directed at Plaintiff by placing calls to him within this District.

9. Defendants purposefully availed themselves of the privileges of conducting business within this District by initiating telemarketing calls to telephone numbers assigned to Pennsylvania residents, including Plaintiff, thereby causing injury within this District.

10. Furthermore, the acts of Infoworx and First Call in placing the calls at issue are attributable to QuoteWizard under principles of actual authority, apparent authority, and/or ratification, and such acts establish minimum contacts with this District on behalf of QuoteWizard.

11. Defendants engaged in a nationwide telemarketing campaign, including substantial and repeated contacts with consumers in Pennsylvania and within this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the receipt of the unlawful telemarketing calls by Plaintiff.

## TCPA BACKGROUND

Calls Made with a Pre-Recorded Message

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

15. Defendants are all is a "persons" as the term is defined by 47 U.S.C. § 153(39).

16. Despite this, the Plaintiff received six telemarketing calls that used an artificial, prerecorded voice which came on the line after a pause and audible click, promoting QuoteWizard's goods or services.

17. After interacting with the artificial voice, in each of the calls, a live agent came on the line and transferred Mr. Abramson directly to QuoteWizard, who offered to connect Mr. Abramson with an insurance company to provide him with insurance.

18. The six calls occurred on the following dates and times:

CALL 1: On 1/13/26 at 9:19 AM on 412-365-2147 from CID 412-374-2066.
CALL 2: On 1/15/26 at 3:30 PM on 412-447-8532 from CID 412-228-6824.
CALL 3: On 2/4/26 at 12:04 PM on 412-365-2147 from CID 412-727-2357.
CALL 4: On 3/16/26 at 4:17 PM on 412-365-2147 from CID 973-554-0710.
CALL 5: On 3/18/26 at 6:29 PM on 412-362-1201 from CID 412-351-0693.
CALL 6: On 3/26/26 at 10:05 AM on 412-362-1201 from CID 412-345-8460.

19. The calls were for a commercial purpose (namely selling insurance) and are not exempted from the restrictions of the TCPA.

20. Given the delay before the recording, the generic nature of the messages, the content of the messages, and that both messages were identical in tone, voice, content, and style, the messages Defendant delivered to the Plaintiff utilized an artificial voice.

21. The calls were not necessitated by an emergency.

22. Prior to the filing of this lawsuit, the Plaintiff wrote to QuoteWizard on March 11, 2026 regarding the telemarketing conduct via mail and email.

23. In response to Mr. Abramson's communication to QuoteWizard, Mr. Abramson received an email from Ronald Perlstein who identified himself as the owner of Infoworx, stated that Infoworx was an affiliate of QuoteWizard and that QuoteWizard had asked him to respond to Mr. Abramson.

24. Mr. Perlstein admitted that Inforworx and its affiliate First Call Solutions sent the calls to QuoteWizard.

25. Mr. Abramson did not consent to receive telemarketing, in writing or otherwise to receiving telemarketing solicitations from or on behalf of Defendants.

26. Nor did Mr. Abramson direct a third party to visit a website, nor did he direct any third party to consent to telemarketing by or on behalf of Defendants on his behalf.

27. QuoteWizard sells goods and services related to insurance.

28. Some of QuoteWizard's marketing strategies involve using recorded messages and/or an artificial voice.

29. Recipients of these outbound calls, including Plaintiff, did not consent to receive the calls.

30. Because Infoworx and First Call were able to transfer Mr. Abramson directly to a QuoteWizard agent, Inforworx and First Call were granted access to QuoteWizard's computer systems as a result of preexisting commercial arrangement.

31. Mr. Perlstein additionally provided Mr. Abramson with partial recordings of CALL 1 and CALL 2, including the portion with a QuoteWizard representative, confirming access to QuoteWizard's computer system.

32. QuoteWizard is legally responsible for ensuring that Inforworx and First Call were legally compliant with the TCPA in placing calls on its behalf.

33. Inforworx and First Call, at the direction of QuoteWizard, telemarketed to Plaintiff and members of the class.

34. QuoteWizard knowingly and actively accepted business that originated through illegal telemarketing.

35. QuoteWizard donned Infoworx and First Call with apparent authority to make the telemarketing calls at issue.

36. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

37. “[A]pparent authority can arise in multiple ways and does *not* require that ‘a principal’s manifestation must be directed to a specific third party in a communication made directly to that person.’” *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

38. A principal can make a manifestation “by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation.” Restatement § 2.03 cmt. c.

39. Here, QuoteWizard designated Inforworx and First Call to generate leads for it, which Inforworx and First Call did via automated telemarketing using an artificial voice.

40. By hiring Infoworx and First Call to make calls on its behalf, QuoteWizard “manifest[ed] assent to another person . . . that the agent shall act on the principal’s behalf and subject to the principal’s control” as described in the Restatement (Third) of Agency (“Restatement”).

41. Infoworx and First call are the agents of QuoteWizard for purposes of the telemarketing at issue. The FCC held that called parties may obtain “evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information.” *Dish*, 28 FCC Rcd. at 6592-93 ¶ 46. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer “should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller’s authorized agent.” *Id.* at 6593 ¶ 46

42. Thousands of people have complained to QuoteWizard about telemarketing by QuoteWizard or its affiliates and vendors.

43. QuoteWizard is no stranger to TCPA violations.

44. It settled a certified class action in the District of Massachusetts of Massachusetts for $19,000,000. *Mantha v. QuoteWizard.com, LLC,* D. Mass. C.A. 1:19-cv-12235-LTS, ECF 397 (September 29, 2025).

45. It has been sued in multiple other cases alleging a violation of the TCPA.

46. QuoteWizard ratified the unlawful telemarketing conduct by, inter alia, directing Infoworx to respond to Plaintiff's complaint, reviewing and retrieving call recordings and purported consent records, and continuing to accept and benefit from leads generated by Infoworx and First Call despite knowledge of TCPA violations.

47. QuoteWizard had the right to control, and did control, the manner and means of the telemarketing campaign, including by providing access to its systems, receiving and processing leads in real time, and requiring the generation and retention of call recordings and alleged consent records.

48. Defendants operated an integrated lead generation system whereby Infoworx and First Call generated consumer leads through telemarketing and transferred those leads directly to QuoteWizard, which immediately monetized such leads by connecting consumers with insurance providers.

49. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes (the "Class"):

> **Telephone Consumer Protection Act Prerecord Class:** All persons in the United States: (1) to whom First Call Solutions, LLC or Infoworx Direct, LLC, or any third party acting on their behalf (2) made one or more non-emergency calls for a commercial purpose, (3) to their residential telephone number, (4) using an artificial or prerecorded voice (5) from the four years prior to the filing of the complaint through the date of trial.

> **Telephone Consumer Protection Act Prerecord Quotewizard Sub-Class:** All persons in the United States: (1) to whom First Call Solutions, LLC or Infoworx Direct, LLC, or any third party acting on their behalf (2) made one or more non-emergency calls' (3) to their residential telephone number, (4) promoting QuoteWizard's goods and/or services (5) using an artificial or prerecorded voice (6) from the four years prior to the filing of the complaint through the date of trial.

51. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

53. Based on the automated nature of calling campaign, there are likely hundreds if not thousands of class members. Individual joinder of these persons is impracticable.

54. There are questions of law and fact common to Plaintiff and the proposed classes, including:

(i) Whether Defendants used prerecorded messages of an artificial voice in their telemarketing calls

(ii) Whether Defendants' calls were for a commercial purpose.

(iii) Whether Defendants' calls were for an emergency purpose.

(iv) Whether the Defendants made such calls with express written consent; and

(v) Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

55. Plaintiff's claims are based on the same facts and legal theories as class members' claims, and therefore are typical of the class members' claims.

56. Plaintiff is an adequate representative of the classes because his interests do not conflict with the class's interests, he will fairly and adequately protect the class's interests, and he is represented by counsel skilled and experienced in litigating class actions.

57. The Defendants' actions are applicable to the class and to Plaintiff.

**FOR A FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violation of 47 U.S.C. § 227(b)**
**On Behalf of Plaintiff and the Prerecord Class**
**(First Call and Infoworx)**

58. The above allegations of the foregoing paragraphs are repeated and realleged herein as if set forth herein.

59. The foregoing acts and omissions of First Call and Infoworx constitute numerous and multiple violations of the TCPA which makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)" 47 U.S.C. § 227(b)(1)(B).

60. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

61. The violations of First Call and Infoworx were negligent, willful, or knowing.

62. As a result of the violations of the TCPA, 47 U.S.C. § 227 by First Call and Infoworx's and/or their affiliates, agents, and/or other persons or entities acting on their behalf, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

63. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting First Call and Infoworx from making telemarketing calls to cellular numbers, except for emergency purposes, in the future.

**FOR A SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violation of 47 U.S.C. § 227(b)**
**On Behalf of Plaintiff and the Prerecord QuoteWizard Sub-Class**
**(First Call, Infoworx and QuoteWizard)**

64. The above allegations of the foregoing paragraphs are repeated and realleged herein as if set forth herein.

65. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA which makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)" 47 U.S.C. § 227(b)(1)(B).

66. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

67. The violations of Defendants were negligent, willful, or knowing.

68. As a result of the violations of the TCPA, 47 U.S.C. § 227 by Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to cellular numbers, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

Plaintiff requests the following relief:

A. That the Court certify the proposed classes;

B. That the Court appoints Plaintiff as class representative;

E. That the Court appoint the undersigned counsel as counsel for the classes;

F. That the Court enter a judgment permanently enjoining Defendants from the conduct above;

G. That the Court enter an order awarding the Plaintiff reasonable attorneys' fees and costs; and

H. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation;

I. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: May 14, 2026

PLAINTIFF, individually and on behalf of all others similarly situated,

By: *<u>/s/ Jeremy C. Jackson</u>*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com