**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CALL SOLUTIONS, LLC, INFOWORX DIRECT, LLC and QUOTEWIZARD.COM, LLC,<br><br>Defendants. | Civil Action No. 2:26-cv-00916-RJC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
QUOTEWIZARD.COM, LLC'S MOTION TO DISMISS
COUNT II OF PLAINTIFF'S COMPLAINT**

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby submits this Memorandum of

Law in Support of its Motion to Dismiss Count II of Plaintiff's Complaint, as that claim concerns

QuoteWizard, for its lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for its failure

to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Stewart Abramson ("Plaintiff") brings this purported class action arising out of alleged

violations of § 227(b) of the Telephone Consumer Protection Act (the "TCPA"). Plaintiff alleges

that he resides in Pittsburgh, Pennsylvania and that Co-Defendants Infoworx Direct, LLC

("Infoworx") and First Call Solutions, LLC ("First Call") made six (6) purported telemarketing

calls to Plaintiff between January 2026 and March 2026. According to Plaintiff, Infoworx and

First Call transferred each of the calls at issue to QuoteWizard. Plaintiff does not allege that

QuoteWizard called Plaintiff, and he does not allege that QuoteWizard otherwise initiated the calls

at issue. Instead, the sole claim against QuoteWizard is premised on a theory that QuoteWizard is

liable to Plaintiff for the acts of Infoworx and First Call because QuoteWizard allegedly advised Infoworx to respond to a demand letter dated March 11, 2026.  Without any foundation, Plaintiff concludes that, because QuoteWizard allegedly asked Infoworx—a Florida company—to respond to the subject demand letter, then QuoteWizard must have entered into a commercial arrangement with Infoworx and granted Infoworx access to QuoteWizard's computer systems.  Plaintiff does not plead or articulate, whatsoever, his reasoning for this conclusion.

Looking squarely at the four corners of the pleading, Plaintiff does not adequately allege that QuoteWizard has sufficient minimum contacts with Pennsylvania.  For this reason alone, judgment of dismissal should enter on the claim against QuoteWizard pursuant to Fed. R. Civ. P. 12(b)(2).  But even if this Court did have personal jurisdiction over QuoteWizard (which it does not), the claim against QuoteWizard nonetheless fails on its face.  Plaintiff ultimately alleges that QuoteWizard is vicariously liable for the acts of Infoworx and First Call.  "[T]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at \*5 (N.D. Cal. Mar. 28, 2018), *quoting Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d 1292, 1301 (D. Nev. 2014).  In this case, Plaintiff does not allege facts sufficient to draw an inference that an agency relationship existed by and between QuoteWizard and Infoworx, or between QuoteWizard and First Call.  As a result, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

I.     **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff filed this putative class action on May 14, 2026, and in Count II of his pleading, Plaintiff asserts a claim against QuoteWizard for purported violations of 47 U.S.C. § 227(b).  *See* Docket Entry No. 1 (the "<u>Complaint</u>") at ¶¶ 64-69.  The Complaint alleges that this action involves

a campaign by QuoteWizard "whose agents First Call … and Infoworx … made telemarketing calls to residential phone numbers using a prerecorded or artificial voice…" *Id.* at ¶ 1. According to Plaintiff, he "received six telemarketing calls that used an artificial, prerecorded voice which came on the line after a pause and audible click, promoting QuoteWizard's goods or services." *Id.* at ¶ 16. Plaintiff alleges that, "[a]fter interacting with the artificial voice, in each of the calls, a live agent came on the line and transferred [Plaintiff] directly to QuoteWizard, who offered to connect [Plaintiff] with an insurance company to provide him with insurance." *Id.* at ¶ 17. According to Plaintiff, the calls occurred on January 13, 2026; January 15, 2026; February 4, 2026; March 16, 2026; March 18, 2026; and March 26, 2026. *Id.* at ¶ 18.

The Complaint alleges that Plaintiff wrote to QuoteWizard on March 11, 2026 regarding the foregoing conduct, both *via* mail and e-mail (the "Demand Letter"). *See* Complaint at ¶ 22. Plaintiff contends that, in response to the Demand Letter that he sent to QuoteWizard, Plaintiff "received an email from Ronald Perlstein who identified himself as the owner of Infoworx, stated that Infoworx was an affiliate of QuoteWizard and that QuoteWizard had asked him to respond to [Plaintiff]." *Id.* at ¶ 23. Plaintiff alleges that "Mr. Perlstein admitted that Infoworx and its affiliate First Call Solutions sent the calls to QuoteWizard." *Id.* at ¶ 24. Plaintiff baldly asserts that, "[b]ecause Infoworx and First Call were able to transfer [Plaintiff] directly to a QuoteWizard agent, Infoworx and First Call were granted access to QuoteWizard's computer systems as a result of [*sic*] preexisting commercial arrangement." *Id.* at ¶ 30.

The Complaint is devoid of any allegation that Perlstein represented that QuoteWizard directed the alleged affiliates to telemarket to Plaintiff. *See* Complaint, generally. Instead, Plaintiff jumps to the conclusion that, because QuoteWizard allegedly asked Infoworx to respond to the March 11, 2026 Demand Letter, then QuoteWizard, somehow, directed the earlier calls to be sent

to QuoteWizard. *Id.* at ¶¶ 23-24. The Complaint does not, in any way, elaborate upon how Plaintiff formed this conclusion. *Id.*, generally. Nonetheless, Plaintiff alleges that "QuoteWizard is legally responsible for ensuring that Inforworx [*sic*] and First Call were legally compliant with the TCPA in placing calls on its behalf," and that "Inforworx [*sic*] and First Call, at the direction of QuoteWizard, telemarketed to Plaintiff and members of the class." *Id.* at ¶¶ 32-33.

Without laying out a factual foundation concerning the relationship between the Co-Defendants, Plaintiff concludes that "QuoteWizard donned Infoworx and First Call with apparent authority to make the telemarketing calls at issue." *See* Complaint at ¶ 35. And again, relying solely on the response to the March 11, 2026 Demand Letter, Plaintiff contends that (i) "QuoteWizard designated Inforworx [*sic*] and First Call to generate leads for it, which Inforworx [*sic*] and First Call did via automated telemarketing using an artificial voice," and (ii) "Infoworx and First call [*sic*] are the agents of QuoteWizard for purposes of the telemarketing at issue." *Id.* at ¶¶ 39, 41. Plaintiff jumps to the legal conclusion that "QuoteWizard ratified the unlawful telemarketing conduct by, inter alia, directing Infoworx to respond to Plaintiff's complaint, reviewing and retrieving call recordings and purported consent records, and continuing to accept and benefit from leads generated by Infoworx and First Call despite knowledge of TCPA violations." *Id.* at ¶ 46. Under Plaintiff's logic, these vague and conclusory allegations demonstrate that "QuoteWizard had the right to control, and did control, the manner and means of the telemarketing campaign, including by providing access to its systems, receiving and processing leads in real time, and requiring the generation and retention of call recordings and alleged consent records." *Id.* at ¶ 47.

The Complaint alleges that Infoworx "is a limited liability company formed under the laws of Florida and headquartered in Boca Raton, Florida," and that First Call "is a limited liability

-4-

company formed under the laws of Connecticut and headquartered in Houston, Texas." *See* Complaint at ¶¶ 4-5. And much like neither Infoworx nor First Call are Pennsylvania companies, Plaintiff likewise alleges that QuoteWizard "is a limited liability company formed under the laws of Delaware and headquartered in Seattle, Washington." *Id.* at ¶ 6.

On these allegations, Plaintiff brings one cause of action against QuoteWizard under 47 U.S.C. § 227(b). *See* Complaint at ¶¶ 64-69. Notably, nowhere in the Complaint does Plaintiff claim that QuoteWizard is vicariously liable through its alleged affiliates; instead, the Complaint represents that "the acts of Infoworx and First Call in placing the calls at issue are attributable to QuoteWizard under principles of actual authority, apparent authority, and/or ratification." *Id.* at ¶¶ 10, 64-69.

## II.   LEGAL STANDARD

### a.   *Legal Standard Under Fed. R. Civ. P. 12(b)(2)*

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A); *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Under Pennsylvania's long-arm statute, this Court may assert personal jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys, Ltd.*, 33 F.3d 277, 279 (3d Cir. 1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir. 1993), *citing Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984).

Consistent with the requirements of due process, this Court can maintain personal jurisdiction over a non-resident, like QuoteWizard, only where the "nonresident corporate

defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   The focus on the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," specifically the extent to which the defendant has, through its contacts, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws."   *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies.   *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).   General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.   *Id.*   Due process for general personal jurisdiction requires a showing that the defendant has had "continuous and systematic contacts" with the forum state so as to render them "essentially at home."   *See Helicopteros*, 466 U.S. at 412-13, 414 fn. 8-9; *Goodyear*, 131 S.Ct. at 2851.

"[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."   *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (internal quotations omitted). The place where a company is incorporated, and the location where it has its principal place of business are the "paradigm bases for the exercise of general jurisdiction."   *Goodyear*, 131 S.Ct. at 2853-54 (internal quotations and citations omitted).

Specific jurisdiction exists "when the plaintiff's 'claim is related to or arises out of the defendant's contacts with the forum.'" *Mellon Bank*, 960 F.2d at 1221, *quoting Dollar Sav. Bank v. First Sec. Bank*, 746 F.2d 208, 211 (3d Cir. 1984). Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum contacts with the forum state. *See International Shoe*, 326 U.S. at 316. Only when a non-resident defendant's conduct is such that he reasonably should have foreseen being haled into court, the necessary minimum contacts have been established. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The relationship [between the non-resident defendant and forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 134 S.Ct. 277, 284 (2014), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 134 S.Ct. at 284; *Helicopteros*, 466 U.S. at 417. The Supreme Court has further stated that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S.Ct. at 284, *citing International Shoe*, 326 U.S. at 319. Specific jurisdiction, therefore, will be held over defendants who purposefully reach out beyond their state and into another to conduct business, "[b]ut the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 134 S.Ct. at 285. Ultimately, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 286, *quoting Burger King*, 417 U.S. at 475.

If a non-resident defendant has sufficient minimum contacts with the forum state, the court may consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, *quoting International Shoe*, 326 U.S. at 320. Such a determination is discretionary, but courts int this circuit "have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction." *Pennzoil Prods. Co. v. Colelli & Assoc.*, 149 F.3d 197, 201 (3d Cir. 1998). Factors to be considered include "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477, *quoting World-Wide Volkswagen*, 444 U.S. at 292.

### b.   *Legal Standard Under Fed. R. Civ. P. 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] … a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A]s explicated in *Ashcroft v. Iqbal* … a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). This circuit "caution[s] that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008).

### III.    ARGUMENT AND AUTHORITIES

The Complaint is devoid of critical facts to survive the pleadings stage.  On the one hand, and as a threshold matter, this Court does not have the ability to exercise personal jurisdiction over QuoteWizard.  Aside from baseless legal conclusions, the Complaint does not aver facts to support a finding that QuoteWizard has sufficient minimum contacts with Pennsylvania.  On the other hand, the Complaint fails to adequately allege the existence of an agency relationship between QuoteWizard and the entities that allegedly placed the calls.  Accordingly, under both Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), dismissal is warranted as to Count II of the Complaint, as that claim concerns QuoteWizard.

### a.    *The Complaint Fails To Allege That QuoteWizard Is Essentially At Home In Pennsylvania, And, Therefore, This Court Cannot Exercise General Personal Jurisdiction Over It*

This Court cannot exercise general personal jurisdiction over QuoteWizard because QuoteWizard is not "essentially at home" in Pennsylvania.  As the Complaint concedes, QuoteWizard "is a limited liability company formed under the laws of Delaware and headquartered in Seattle, Washington."  *See* Complaint at ¶ 6.  The Complaint does not contain any factual allegations suggesting that QuoteWizard's contacts with Pennsylvania are "continuous and systemic" to the point of "render[ing] [QuoteWizard] essentially at home" in Pennsylvania.  *See Helicopteros*, 466 U.S. at 412-13, 414 fn. 8-9; *Goodyear*, 131 S.Ct. at 2851.  Accordingly, for this Court to exercise personal jurisdiction over QuoteWizard, it must invoke specific personal

jurisdiction based solely on the facts set forth in the Complaint.  Plaintiff's pleading, however, fails to establish any such specific personal jurisdiction.

### b. *QuoteWizard Did Not Contact Plaintiff In Pennsylvania Or Otherwise Initiate The Calls At Issue, Such That This Court Cannot Invoke Specific Personal Jurisdiction*

Plaintiff fails to allege sufficient contacts between QuoteWizard and Plaintiff for this Court to exercise specific jurisdiction over QuoteWizard.  In fact, on its face, the Complaint fails to allege a single fact demonstrating that QuoteWizard purposefully availed itself of the privilege of conducting activities within Pennsylvania, thus invoking the benefit and protection of its laws.  In his Complaint, Plaintiff contends that the Co-Defendants, Infoworx and First Call, "purposefully availed themselves of the privileges of conducting business within this District by initiating telemarketing calls to telephone numbers assigned to Pennsylvania residents."  *See* Complaint at ¶ 9.  Plaintiff does not allege that QuoteWizard initiated the calls at issue; instead, he suggests that personal jurisdiction is proper because "the acts of Infoworx and First Call in placing the calls at issue are attributable to QuoteWizard under principles of actual authority, apparent authority, and/or ratification, and such acts establish minimum contacts with this District on behalf of QuoteWizard."  *Id.* at ¶ 10.  Not only is that allegation a legal conclusion not rooted in fact, but also, Plaintiff does not even attempt to elaborate on how such minimum contacts are established in his pleading.

At most, Plaintiff alleges that QuoteWizard asked Infoworx to respond to an email that Plaintiff sent to QuoteWizard in March 2026.  *See* Complaint at ¶ 23.  Plaintiff offers zero allegations from which this Court can conclude that QuoteWizard "*expressly aimed [its] conduct at Pennsylvania*," as required to establish specific personal jurisdiction.  *Marten v. Godwin*, 499 F.3d 290, 293 (3d Cir. 2007) (emphasis added).  The act of advising another non-resident to

respond to an email, even if true, is precisely the type of "'random, fortuitous, or attenuated' contact [a defendant] makes by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 286, *quoting Burger King*, 417 U.S. at 475. To that end, in this case, Plaintiff is the "only link between the defendant and the forum." *Walden*, 134 S.Ct. at 285. Specific personal jurisdiction, therefore, cannot be exercised over QuoteWizard.

If "[n]othing about [QuoteWizard's] role demonstrates any particular focus on or targeting Pennsylvania," then this Court does not have personal jurisdiction over it. *Lacon v. Educ. Principle Found.*, No. 2:21-CV-03957-JDW, 2022 WL 2240074, at *3 (E.D. Pa. June 22, 2022), *citing O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). To that end, even if QuoteWizard engaged in some type of activity that made it "possible" for the Co-Defendants to avail themselves to the privileges of this district (which QuoteWizard does not admit and expressly denies), such conduct is not enough to establish personal jurisdiction over QuoteWizard. *See Lacon*, 2022 WL 2240074, at *1 ("There's a difference between something that is possible and something that is probable. … 'Probably' means there's a good chance [something will happen,] 'possibly' means [it] might, [it] might not. … That distinction matters in the world of personal jurisdiction, where a court has to decide what conduct purposefully targets a jurisdiction. In the context of telemarketing calls, conduct that makes a phone call into a jurisdiction possible often will not be enough, but conduct that makes a call probable likely will.") (internal quotations omitted).

The Complaint does not contain a single plausible allegation that QuoteWizard engaged in some type of activity that made it "probable" for the Co-Defendants to purportedly make the calls at issue in this suit. In *Lacon*, a TCPA action in this circuit, the Court found that no personal jurisdiction existed over a defendant who sold lists of potential leads, even though "those sales

made it possible that someone would call the individuals on those lists." *Lacon*, 2022 WL 2240074, at *1. "So even though [the defendant] sold a list that included [the plaintiff's] name and phone number, and [the plaintiff] received a call, [the defendant] did not target its activity at Pennsylvania. The Court therefore does not have personal jurisdiction over [the defendant]." *Id.* at *1. Such a situation is akin to the matter currently before the Court.

Without any detail or foundation, Plaintiff baldly asserts that QuoteWizard entered into a "preexisting commercial arrangement" with both Infoworx and First Call. *See* Complaint at ¶ 30. Again, QuoteWizard does not admit and instead denies such allegation; however, even if taken as true, this allegation is insufficient grounds for this Court to exercise personal jurisdiction over QuoteWizard. Plaintiff does not describe the so-called "preexisting commercial arrangement," such that this Court cannot conclude that, as a result of the alleged arrangement, QuoteWizard's conduct made it "possible" for the Co-Defendants to call Plaintiff, let alone "probable." And even if the Complaint alleged that QuoteWizard engaged in certain conduct that made it "possible" for the Co-Defendants to call Plaintiff, such that QuoteWizard "knew … that they might call [Plaintiff]," the fact that the Complaint does not detail that QuoteWizard "had … control over" what the Co-Defendants did renders personal jurisdiction non-existent. *Lacon*, 2022 WL 2240074, at *3.

Notably, to the extent Plaintiff argues that his telephone number(s) at issue are associated with area codes in this district (which the Complaint does not even allege), any such argument does not support the exercise of personal jurisdiction over QuoteWizard. *See Lacon*, 2022 WL 2240074, at *3. As the *Lacon* court wrote *in dicta*:

> [Plaintiff] argues that because the lead packets included phone numbers with Pennsylvania area codes, [Defendant] knew that [Co-Defendants] would make calls to Pennsylvania. But in an era of mobile phones, area codes do not always tie geographically to the user's location. Those Pennsylvania area codes could have

users in New Jersey, California, or Alabama.   And, it bears repeating that [Defendant] did not know that [Co-Defendants] would call any particular individual in the lead packets.  Just as websites that collect information nationally do not target a particular jurisdiction where they are active, the provision of a national list of leads does not target every jurisdiction included in the lead packet.

*Id.*

Ultimately, because Plaintiff fails to allege that QuoteWizard focused or targeted its activities in Pennsylvania, this Court cannot exercise specific personal jurisdiction over QuoteWizard.   The facts set forth in the Complaint, even when accepted as true, cannot be construed in such a way to support a finding that QuoteWizard acted in such a way that it could have expected to be haled into this Court.

### c.   The Complaint Fails To Adequately Allege Vicarious Liability, Such That Count II Against QuoteWizard Must Be Dismissed Pursuant To Rule 12(b)(6)

Plaintiff asserts a single claim against QuoteWizard under § 227(b)(1)(B) of the TCPA, which prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* Complaint at ¶¶ 64-69; *see also* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).  Through his Complaint, Plaintiff appears to concede that QuoteWizard did not place any violative calls to Plaintiff; instead, Plaintiff contends that QuoteWizard is on the hook under the principles of actual authority and apparent authority.  *See* Complaint at ¶ 10.  Lacking from Plaintiff's Complaint, however, is a link between QuoteWizard allegedly directing Infoworx to respond to the Demand Letter, on the one hand, and Plaintiff's conclusion that QuoteWizard therefore granted the Co-Defendants access to QuoteWizard's computer systems, on the other hand.

Liability under the TCPA, whether direct or vicarious, does not extend to parties "merely because they 'stand to benefit' from the call."  *Klein v. Just Energy Grp., Inc.*, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016), *quoting In the Matter of the Joint Petition filed by Dish Network,*

-13-

*LLC*, 28 FCC Rcd. 6574 (2013).  Rather, it is well-established that, "[f]or a person to 'make' [or initiate] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call."  *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019), *quoting Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018); *see also Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) ("There are two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability.").

To maintain a claim for vicarious liability, a plaintiff must plead sufficient facts to demonstrate a special consensual relationship between a principal and an agent.  *See* Restatement (Third) of Agency at § 1.01 ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."); *see also Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 619 (E.D. Pa. 2015) (dismissing case where plaintiff did not plead any allegations that could plausibly support her vicarious liability theories).  Despite the Complaint's conclusion that the acts of Infoworx and First Call are attributable to QuoteWizard under an agency theory, as a matter of law, the pleading fails because it does not adequately allege actual authority, apparent authority, and/or ratification.

### i.    *Plaintiff Fails To Adequately Allege Actual Authority*

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  *Naiman v. TranzVia LLC*, 2017 WL 5992123, ay*6 (N.D. Cal. Dec. 4, 2017), *quoting Jones v. Royal Admin*

*Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017).  "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."  *Dobkin v. Enterprise Financial Group, Inc.*, No. 2014 WL 4354070 at \*4 (D.N.J. Sept. 3, 2014).  "Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013).  Actual authority requires "'more than passive permission; it involves request, instruction, or command.'"  *Linlor v. Five9, Inc.*, 2017 WL 5885671, at \*3 (S.D. Cal. Nov. 29, 2017), *citing Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931); *see also Salyers v. Metropolitan Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (actual authority requires "a general statement of what the agent is supposed to do.").

Importantly, "though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed."  *Meeks*, 2018 WL 1524067, at \*5, *quoting Kristensen*, 12 F.Supp.3d at 1301.  In the TCPA context, courts recognize that vicarious liability cannot attach without the "essential ingredient" of control.  *Jones*, 866 F.3d at 1106; *see also In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F.Supp.3d 514, 520 (N.D.W.Va. 2016) ("[I]n order to prove actual agency [for vicarious liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted.").  Accordingly, Plaintiff "must allege *some* facts regarding the relationship between an alleged principal and agent" showing that QuoteWizard had the right to control Infoworx and First Call—and, more specifically, control the manner and means of the

caller's telemarketing campaign—and "cannot simply allege general control in a vacuum." *Melito v. American Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (emphasis in original); *see also Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *9 (E.D.Va. Nov. 12, 2020) (ruling similarly and *citing Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *3 (E.D.Va. Apr. 15, 2019); *Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) ("[a]n entity cannot be held [vicariously] liable under the TCPA merely because they stand to benefit from the call.") (internal quotations omitted).

Consequently, courts in the Third Circuit and beyond dismiss TCPA claims premised on vicarious liability at the pleadings stage where, as here, a plaintiff fails to allege sufficient facts establishing an agency relationship with or control over a purported agent. *See*, *e.g.*, *Zarichny*, 80 F.Supp.3d at 619 (dismissing case where plaintiff did not plead any allegations that could plausibly support her vicarious liability theories); *Kline v. Elite Med. Lab'ys, Inc.*, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) (dismissing case where "there [was] no allegation that [defendant] directed the callers to call Plaintiff on his behalf, or that [defendant] caused the callers to reasonably believe that they had the authority to call Plaintiff on [defendant's] behalf"); *Landy*, 2021 WL 3634162, at *3-5 (dismissing case where plaintiff did not plead facts supporting a viable vicarious liability theory); *Melito*, 2015 WL 7736547 at *7 (dismissing case on vicarious liability grounds and holding that the "mere conclusory allegations that [the caller] was [defendant's] agent … fails to plead an agency relationship … sufficient to allege vicarious liability" under § 227(b) of the TCPA); *Bank v. Vivint Solar, Inc.*, 2019 WL 1306064, at *4 (E.D.N.Y. Mar. 22, 2019) (dismissing case where complaint lacked "any allegations that [the defendant] had the power to give interim instructions to [the purported agent], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the purported agent].") (internal quotations omitted); *Panacci*

*v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing case where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller and pled "virtually no allegations regarding the relationship" between defendant and caller); *Rogers*, 2020 WL 3869191, at *8 (dismissing case where plaintiff failed "to allege that [the defendant] had some degree of control over who sent the text and the manner and means by which it was sent"); *DeClements v. RE/MAX LLC*, 2020 WL 9259326, at *3-4 (D. Colo. Oct. 13, 2020) (bald allegations that caller was calling "on behalf" of defendant insufficient to show agency).   In short, "[t]he alleged existence of *some* connections between the defendant and the maker of the call will not suffice" to allege a vicarious TCPA liability claim.  *Bank*, 2019 WL 2280731, at *3 (emphasis in original).

In this case, Plaintiff fails to allege the "essential ingredient" of control and, therefore, he has failed to plead any facts supporting the sole claim for vicarious liability against QuoteWizard under a theory of actual authority.  At best, Plaintiff claims that, because Infoworx identified itself as an "affiliate" of QuoteWizard when responding to the Demand Letter, then Infoworx acted as QuoteWizard's agent for purposes of the calls at issue in the Complaint.[1]  But lacking from this theory of liability *via* actual authority is an explanation linking Infoworx's response to the Demand Letter to Plaintiff's significant conclusion that QuoteWizard must have granted Infoworx and First Call access to its computer systems and "had the right to control, and did control, the manner and means of the telemarketing campaign." *See* Complaint at ¶ 47.  Read in a vacuum, the Complaint is incoherent and devoid of critical allegations, including how Plaintiff formed the conclusion that QuoteWizard controlled its alleged "affiliates."  And while the Complaint states that Infoworx

---

[1]     Such reasoning is akin to the conclusion that, because an associate at a law firm is affiliated with a partner at the same law firm, then every task the associate performs must be undertaken as the partner's agent—an obviously untenable result.

represented that it was an affiliate of QuoteWizard, the Complaint does not state that Infoworx or First Call represented that QuoteWizard directed them to make the calls at issue. Plainly, Plaintiff's theory of vicarious liability is ambiguous, confusing, and otherwise incoherent.

### ii.    Plaintiff Fails To Adequately Allege Apparent Authority

"Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Kline*, 2019 WL 6828590, at \*5; *Landy*, 2021 WL 3634162, at \*4 (apparent authority must be "traced to the principal's own manifestations"); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at \*6 (N.D. Ill. Feb. 13, 2018) ("apparent authority requires that the principal made manifestations *to* the third party … that created the third party's reasonable belief.") (emphasis in original). "Apparent authority exists when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Brown v. DirecTV, LLC*, 562 F.Supp.3d 590, 607 (C.D. Cal. 2021); *see also N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) ("Apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by [the principal] on which [the third party] reasonably relied.").

The Complaint does not articulate in any meaningful fashion (1) that QuoteWizard made any representations or manifestations to the Co-Defendants that instilled any requisite reasonable belief that they were acting on QuoteWizard's behalf when making the subject phone calls, to the extent any such phone calls were made by them, (2) that QuoteWizard had any relationship with Infoworx or First Call, (3) that QuoteWizard exerted control over Infoworx and First Call, (4) that Infoworx and First Call were operating as part of QuoteWizard's business, (5) that QuoteWizard

supplied Infoworx and First Call with tools and instrumentalities to make the calls at issue, and (6) that QuoteWizard, Infoworx, and First Call maintained a long-term or permanent working relationship. *See, e.g.*, *Jones*, 887 F.3d at 450 (analyzing these and other factors holding that a seller was not vicariously liable for telemarketer's alleged TCPA violations); *see also Monitronics*, 223 F.Supp.3d at 520 (discussing similar factors); *Landy*, 2021 WL 3634162, at *3-4 (finding plaintiff's allegation that he was transferred to defendant insufficient to show that defendant "authorized the initial caller, directed them, or was aware of their conduct" and therefore the complaint failed to sufficiently allege agency and noting that "[a]n entity cannot be held liable under the TCPA merely because they stand to benefit from the call.") (internal quotations omitted); *Zarichny*, 80 F.Supp.3d at 619 (dismissing case where plaintiff did not plead allegations that could plausibly support her vicarious liability theories); *Kline*, 2019 WL 6828590, at *6 (dismissing case where "there [was] no allegation that [defendant] directed the callers to call Plaintiff on his behalf, or that [defendant] caused the callers to reasonably believe that they had the authority to call Plaintiff on [defendant's] behalf.").

Other than alleging that Infoworx stated that QuoteWizard asked it to respond to the Demand Letter, Plaintiff does not allege that QuoteWizard did or said anything to Infoworx or First Call, such that they relied on such actions, statements, or manifestations as required to adequately plead apparent authority. Where there are zero allegations linking any actions or statements on the part of QuoteWizard to any acts taken by Infoworx or First Call, the pleading lacks allegations sufficient to plead a theory of apparent authority. *See Cunningham*, 2018 WL 835222, at *6 (rejecting plaintiff's argument that third-party telemarketers had apparent authority "simply because they mentioned Defendants' products on their calls and sent him paperwork featuring Defendants' names."). It follows that the Complaint fails to satisfy the federal pleading

requirements for apparent authority, and should thus be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### iii.    Plaintiff Fails To Adequately Allege Ratification

Ratification requires allegations "in the form of an act manifesting affirmance of the calls, manifesting assent for the calls, or justifying a reasonable assumption that [defendant] consented." *Klein*, 2016 WL 3539137, at *12. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs., LLC*, 879 F.3d 1010, 1014 (9th Cir. 2018). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.*, *citing* Restatement (Third) of Agency § 4.01(1).

For the same reasons the Complaint fails to properly allege actual or apparent authority, so too does the Complaint fail to assert facts supporting the legal conclusion that QuoteWizard ratified the Co-Defendants' acts. The Complaint does not contain any facts establishing that QuoteWizard affirmed the acts of Infoworx or First Call, and it does not otherwise suggest that QuoteWizard acted in such a way so as to manifest assent of the subject calls. Accordingly, any claim premised upon a theory of ratification must be dismissed because the pleading does not include facts concerning any such manifestation or affirmation.

### IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, QuoteWizard respectfully requests that this Court dismiss Count II of the Complaint, to the extent that claim concerns QuoteWizard, with prejudice.

Respectfully Submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP,**

*/s/ Kevin P. Polansky*
Kevin P. Polansky (Admitted *Pro Hac Vice*)
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4720
Facsimile: (617) 217-4710
kevin.polansky@nelsonmullins.com

***Counsel for Defendant QuoteWizard.com, LLC***

Date: June 18, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: June 18, 2026          */s/ Kevin P. Polansky*
                              Kevin P. Polansky (Admitted *Pro Hac Vice*)