# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEWART ABRAMSON, on behalf of
himself and others similarly situated,

    Plaintiff,

        v.

FIRST CALL SOLUTIONS, LLC,
INFOWORX DIRECT, LLC and
QUOTEWIZARD.COM, LLC,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:26-cv-00916-RJC

District Judge Robert J. Colville

## PLAINTIFF'S OPPOSITION TO QUOTEWIZARD.COM, LLC, MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT

The motion to dismiss of QuoteWizard.com, LLC ("QuoteWizard") should be denied. As an initial matter, contrary to QuoteWizard's motion, it is subject to this Court's general jurisdiction by virtue of its registration to do business in the Commonwealth of Pennsylvania. As to its challenge to specific personal jurisdiction and the claim of its vicarious liability, although QuoteWizard pays lip service to the pleading standards for Rule 12(b)(2) and 12(b)(6) motions requiring a movant to accept allegations as true, QuoteWizard mischaracterizes the specific allegations in Plaintiff's complaint which courts in this District and Circuit have found more than adequate to support an exercise of specific personal jurisdiction as well as to state a claim of vicarious liability under the Telephone Consumer Protection Act, 42 U.S.C. § 227. Indeed, the primary case relied upon by QuoteWizard in support of its motion as to specific personal jurisdiction, *Lacon v. Educ. Principle Found.*, 2022 U.S. Dist. LEXIS 110160 (E.D. Pa, June 22, 2022) draws a contrast between the facts in that case, and cases directly analogous to the facts alleged here, where an entity hired third parties to place calls into Pennsylvania—which is

sufficient support personal jurisdiction and states a claim of vicarious liability against QuoteWizard.

Plaintiff respectfully submits that QuoteWizard's motion should be denied

### Facts Alleged in the Complaint

Plaintiff Stewart Abramson ("Mr. Abramson" or "Plaintiff") alleges that this case involves a campaign by QuoteWizard whose agents First Call Solutions, LLC ("First Call") and InfoWorx Direct, LLC ("Infoworx") made telemarketing calls to market QuoteWizard's goods and services by initiating telemarketing calls to residential telephone numbers using a prerecorded or artificial voice in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").  Compl. ¶ 1. As part of the campaign, defendants placed six telemarketing calls to Plaintiff that used an artificial, prerecorded voice which came on the line after a pause and audible click, promoting QuoteWizard's goods or services. *Id*. ¶ 16.

After interacting with the artificial voice which promoted QuoteWizard, in each of the calls, a live agent came on the line and transferred Mr. Abramson directly to QuoteWizard, who offered to connect Mr. Abramson with an insurance company to provide him with insurance. *Id*. ¶ 17. Mr. Abramson specifically alleged that this Court has personal jurisdiction as defendants conduct was directed at Plaintiff by placing calls to him within this District. *Id*. ¶ 8. Furthermore, Mr. Abramson alleged that defendants purposefully availed themselves of the privilege of conducting business within this District by initiating calls to Pennsylvania residents, including Plaintiff, thereby causing injury within this District. *Id.* ¶ 10. Mr. Abramson also alleged that the acts of QuoteWizard's agents InfoWorx and First Call in placing the calls at issue are attributable to QuoteWizard under principles of actual authority, apparent authority, and/or ratification and such acts establish minimum contacts with this District on behalf of QuoteWizard. *Id.* ¶ 10.

Mr. Abramson alleges that InfoWorx and First Call, at the direction of QuoteWizard, telemarketed to him on behalf of QuoteWizard. *Id.* ¶ 33. Mr. Abramson alleges that QuoteWizard had the right to control, and did control, the manner and means of the telemarketing campaign, including by providing access to its systems, receiving and processing leads in real time, and requiring the generation and retention of call recordings and alleged consent records. Id. ¶ 47. Defendants operated an integrated lead generation system whereby InfoWworx and First Call generated consumer leads through telemarketing and transferred those leads directly to QuoteWizard, which immediately monetized such leads by connecting consumers with insurance providers. *Id.* ¶ 49.

Mr. Abramson alleges because InfoWorx and First Call were able to transfer Mr. Abramson directly to a QuoteWizard agent, InfoWorx and First Call were granted access to QuoteWizard's computer systems as a result of a preexisting commercial arrangement. *Id.* ¶ 30. In Mr. Abramson's pre-suit investigation into the illegal calls that he received, he wrote to QuoteWizard who rather than responding directly, had InfoWorx principal Ronald Perlstein email Plaintiff. *Id*. ¶ 23. Mr. Perstein was able to provide Mr. Abramson with partial recordings of two of his calls, including the portion with a QuoteWizard agent, confirming that he had access to QuoteWizard's computer system. *Id*. ¶ 31.

Mr. Abramson alleges that by hiring InfoWorx and First call to make calls on its behalf, QuoteWizard it donned both InfoWorx and First Call with apparent authority to act as its agent as it "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement"). *Id*. ¶ 40. Mr. Abramson additionally alleged that QuoteWizard ratified the unlawful telemarketing conduct by, inter alia, directing InfoWorx to respond to Plaintiff's

complaint, reviewing and retrieving call recordings and purported consent records, and continuing to accept and benefit from leads generated by InfoWorx and First Call despite knowledge of TCPA violations. *Id.* ¶ 46.

**STANDARD OF REVIEW**

This Court has set forth the standard for reviewing motions to dismiss under Rule 12(b)(2) as follows:

> A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) tests the Court's power over the defendant. There are two kinds of personal jurisdiction: specific and general. A court that has general jurisdiction over a party has jurisdiction to hear all claims against that party, irrespective of the relationship between those claims and the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). General jurisdiction is proper over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). A corporation is typically "at home" where it is incorporated and where it has its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" (quoting Lea Brilmayer, Jennifer Haverkamp, & Buck Logan, *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 735 (1988)).
>
> Specific jurisdiction, on the other hand, exists where a claim relates to the defendant's contacts with the forum. *See Goodyear*, 564 U.S. at 923-24 ("Adjudicatory authority is 'specific' when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984))). Under the Federal Rules of Civil Procedure, district courts may exercise specific personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). In exercising personal jurisdiction, a court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir.1985).

4

In Pennsylvania, the inquiry into whether the state's long-arm statute satisfies the United States Constitution is straightforward. The statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Const. Stat. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the Due Process Clause. *North Penn Gas*, 897 F.2d at 690. Under *International Shoe*, the Due Process Clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotations omitted).

To establish "minimum contact" in intentional torts cases, the United States Supreme Court has developed a three-pronged "effects" test. *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under the *Calder* test, the following elements must be satisfied: (1) the defendant committed an "intentional tort," (2) the plaintiff "felt the brunt of the harm" in the forum, such that the forum can be said to be the focal point of the harm suffered, and (3) the defendant "expressly aimed" the allegedly tortious conduct at the forum. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998); *Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001).

The plaintiff bears the burden of establishing that these standards are met to show that personal jurisdiction exists over the defendant. Where the parties have not conducted discovery, the plaintiff need only make a *prima facie* showing that jurisdiction is proper, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008).

*Schnur v. JetBlue Airways Corp.*, No. 2:22-1621, 2024 U.S. Dist. LEXIS 97813, at *4-7 (W.D. Pa. June 3, 2024) (Colville, J.). In the same decision, the Court set forth the familiar standard under Rule 12(b)(6):

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a

5

Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

*Id*. at **8-10 (W.D. Pa. June 3, 2024).

**ARGUMENT**

1. **Contrary to QuoteWizard's assertion, by virtue of its registration to do business in the Commonwealth of Pennsylvania, it is subject to this Court's General Jurisdiction**

Although QuoteWizard asserts in its motion that it is not subject this Court's general jurisdiction, it registered to do business in Pennsylvania on June 11, 2019, a registration which remains active. *See* <u>Declaration of Edward A. Broderick and Exhibit A thereto,</u> a certified copy of the QuoteWizard's registration downloaded on June 23, 2026. By virtue of this registration, QuoteWizard is subject to the general jurisdiction of the courts of the Commonwealth of Pennsylvania and this Court. This is so because  Pennsylvania statutes 15 Pa. Cons. Stat. § 411, and 42 Pa. Cons. Stat. §  5301(a)(2)(i) provide that courts of the Commonwealth can exercise general personal jurisdiction over registered foreign corporations. In 2023 the United States Supreme Court upheld the constitutionality of Pennsylvania's consent to jurisdiction by registration scheme in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 135, 144, 143 S. Ct. 2028, 216 L. Ed. 2d 815 (2023).

> A Court in this District recently denied a motion to dismiss under precisely this scenario:
>
> "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). Pennsylvania courts have general personal jurisdiction over out-of-state corporations that register to do business within the Commonwealth. 42 Pa. C.S. § 5301(a)(2)(i). That registration is required by law. 15 Pa. C.S. § 411(a).
>
> To meet its burden under Rule 12(b)(2), Plaintiffs provided an internet screenshot of Acadia's registration as an out-of-state corporation with the Pennsylvania Department of State. (ECF No. 26-2, p. 1). That registration was initially made on August 29, 2014, and it is evidently ongoing, as Acadia's annual report is due to the Pennsylvania Department of State on June 30, 2026. (*Id.*). Acadia argues that the screenshot is not sufficient evidence to rebut its assertion that it neither conducts business in Pennsylvania or exercises control over Southwood. (ECF No. 33, pp. 4-5). But Plaintiffs need only make a prima facie showing of the Court's jurisdiction

over Acadia, and the Court finds that the screenshot is sufficient evidence of Acadia's corporate registration in Pennsylvania.

The Supreme Court has held for over a century, and recently re-affirmed, that personal jurisdiction on the basis of corporate registration does not deny a defendant due process of law. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 135, 144, 143 S. Ct. 2028, 216 L. Ed. 2d 815 (2023) (citing *Pennsylvania Fire Ins. Co. of Phila. v. Gold Issue Min. & Mill Co.*, 243 U.S. 93, 37 S. Ct. 344, 61 L. Ed. 610 (1917)). The Court need not consider Acadia's contacts with Pennsylvania because *International Shoe* considered whether a non-consenting out-of-state defendant could be haled into court. *Mallory*, 600 U.S. at 138 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Acadia registered to do business in Pennsylvania in compliance with § 411(a), and it has consented to the jurisdiction of Pennsylvania's courts (and by extension, this Court). *Id.* at 146. Acadia's motion to dismiss for lack of jurisdiction will be denied.

*B.B. v. Acadia Healthcare*, Civil Action No. 2:25-cv-1593, 2026 LX 184089, at *10-12 (W.D. Pa. Mar. 31, 2026); accord, *Thurlow v. Nat'l Insp. Servs., LLC*, No. 2:24-CV-01135-CCW, 2025 LX 207028, at *9 (W.D. Pa. Feb. 6, 2025) ("the Court finds that general personal jurisdiction exists over NIS because it is registered as a foreign corporation in Pennsylvania, and therefore has consented to general personal jurisdiction.").

2. **Even if QuoteWizard.com, LLC were not subject to this Court's general jurisdiction, Mr. Abramson has more than plausibly pled a basis for the Court's exercise of specific personal jurisdiction over QuoteWizard.**

The clearest example that QuoteWizard's challenge to specific personal jurisdiction is not well taken is its heavy reliance on *Lacon v. Educ. Principle Found.*, 2022 U.S. Dist. LEXIS 110160 (E.D. Pa, June 22, 2022). *Memorandum in Support* at 10-13. In *Lacon,* Defendant Jobsflag successfully moved to dismiss plaintiff's complaint on jurisdictional bases. Defendants fail to mention that the court's reasoning was primarily based on Jobsflag's lack of involvement in the telemarketing scheme:

JobsFlag's role in the telemarking scheme was to compile lead packets that it sold to Graspy and Yodel. JobsFlag had no control over what Graspy and Yodel did with those lead packets. It knew, of course, that they might call

8

some or all of the individuals listed. But it was also possible that they would mail or email, rather than call. Or they might have compared the list to other marketing materials to winnow the universe of people they called. JobsFlag had no control over what Graspy and Yodel did with those contacts, and it did not monitor what they did. Nor was its compensation tied to the calls in any way. Once it sent the lead packets, its role ended. Because JobsFlag did not place calls to Pennsylvania, supervise or direct the companies that made those calls, or even monitor whether those companies made calls at all, the cases on which Mr. Lacon relies, in which a company directed a third party to make a call, do not apply.1

*Lacon v. Educ. Principle Found.*, No. 2:21-cv-03957-JDW, 2022 U.S. Dist. LEXIS 110160, at *7-8 (E.D. Pa. June 22, 2022). In the footnote distinguishing JobsFlag's role from that of a principal alleged to be vicariously liable for its agents calling into a forum, the Lacon court cites three cases in which motions to dismiss for lack of personal jurisdiction by the allegedly vicariously liable principals were denied. *Abramson v. Agentra, LLC*, Civ. A. No. 18-615, 2018 WL 6617819, at *1, *4-5 (W.D. Pa. Dec. 18, 2018); *Ott v. Mortg. lnv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1057-58 (D. Or. 2014); *Hudak v. Berkley Grp., Inc.*, 2014 WL 354676, at *2 (D. Conn. Jan. 23, 2014).

That *Lacon* recognizes this distinction is not surprising as courts in Pennsylvania have denied similar motions, where a foreign corporation makes or authorizes a call into this District and then, unsurprisingly, get hauled into court in this District. See e.g. *Newell v. Strategic Admin. Group,* No. 2:20-cv-00967, 2020 U.S. Dist. LEXIS 261006 (E.D. Pa, May 6, 2020) (seller alleged to be vicariously liable for calling into Pennsylvania subject to personal jurisdiction in Pennsylvania). A number of these cases have involved Mr. Abramson himself. For example, in denying a motion to dismiss for lack of personal jurisdiction, Judge Cohill held:

> First, we note that the call made by CCL was to a phone number bearing a (412) area code - such a code is limited to residents of Pennsylvania. By initiating a call to such a number, it can be said that Defendant CCL "expressly aimed their conduct at Pennsylvania" because the number was associated with the State of Pennsylvania. See Marten, 499 F.3d at 296. Defendant would have, or should have,

9

known it was reaching into Pennsylvania when the call was made. This satisfies the requirement for sufficient minimum contacts under the law.

*Abramson v. Caribbean Cruise Line, Inc.,* No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 at

*23-24 (W.D. Pa. June 23, 2014).

Similarly Judge Kearney held:

District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code…We likewise find purposeful direction based on Abramson's averment CWS sent the text message to his cell phone bearing a Pennsylvania area code.

The remaining requirements of specific personal jurisdiction are satisfied. As to the second requirement, Abramson's claim under the Act arises from this text message. As to the third requirement, CWS must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." In making this determination, we consider: 1) the burden on CWS; 2) the interests of Pennsylvania; 3) Abramson's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.

CWS fails to meet its burden under this test. Only the first factor weighs in CWS's favor, as CWS has no apparent affiliation with Pennsylvania absent the text message and CWS claims defending a case in Pennsylvania would be a hardship because it is based in Texas. The remaining factors, however, do not demonstrate the exercise of jurisdiction contravenes fair play and substantial justice. As to the second factor, Pennsylvania "has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents." As to the third factor, Abramson has an interest in obtaining relief for violation of his rights under the Act. As to the remaining factors, CWS fails to identify facts weighing against the exercise of jurisdiction. CWS fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

*Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *10-11 (W.D. Pa. Oct. 24, 2016).

The material facts of this case present an even stronger claim for specific personal jurisdiction than *Abramson v. CWS Apartment Homes*. Mr. Abramson's phone intentionally was called in Pennsylvania as part of the QuoteWizard telemarketing campaign, and Mr. Abramson's

10

claim arises under the TCPA for that automated conduct, as discussed above. The solicitations at issue transferred Mr. Abramson directly to QuoteWizard agents, supporting the contention that they were significantly involved in the telemarketing scheme. Furthermore, QuoteWizard has not carried its burden as to why defending this lawsuit in a jurisdiction where they directed their telemarketing would be unreasonable. Unlike *Abramson v. CWS Apartment Homes*, where the defendant did not offer goods or services in Pennsylvania, QuoteWizard acquires Pennsylvania residents for its services, as it was trying to do with the Plaintiff. As a result, this court's exercise of jurisdiction over the Defendant comports with traditional notions of fair play and substantial justice. As Judge Cohill found in the *Abramson v. Caribbean Cruise Line, Inc.*:

> Finding the necessary minimum contacts to establish specific personal jurisdiction over Defendant CCL, we move to considerations of whether litigation in this forum would offend "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. at 320…Because we found sufficient minimum contacts between CCL and Pennsylvania, and because CCL has failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," we find that our exercise of specific personal jurisdiction over CCL does not offend the traditional notions [*25] of fair play and substantial justice. See Grand Entertainment, 988 F.2d at 483 (quoting Burger King, 471 U.S. at 477) (Noting that after sufficient minimum contacts are found, "it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

2014 U.S. Dist. LEXIS 88336 at 24-25.

To conclude that there is no specific jurisdiction when a defendant directed a telemarketing call (and itself offered goods and services) to a Plaintiff that it admits it has no business relationship with would likely eviscerate enforcement of the TCPA, since telemarketers could simply call individuals with impunity, knowing that they would be required to come to their home state in order to litigate a dispute. Defendant's position is contrary to routine assertions of jurisdiction in cases asserting personal torts.

11

**3. The Complaint sufficiently alleges plausible bases for QuoteWizard's vicarious liability for its co-defendant's telemarketing under theories of actual authority, apparent authority and ratification.**

QuoteWizard's attack on the adequacy of Plaintiff's vicarious liability allegations fares no better than its jurisdictional challenge—particularly in light of the fact that vicarious liability under the TCPA is a fact-intensive inquiry that does "not require the usual level of particularity" from the complaint. *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020). The standard recognizes that "the information necessary to connect all the players is likely in [Defendants'] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). To state a claim that a defendant violated the TCPA based on a theory of vicarious liability, the plaintiff "must plausibly allege [only] that [a third party] was acting as an agent of [defendant], i.e. that [defendant] exercised control over, ratified or openly authorized [the third party's] actions." *Rosenberg,* 435 F. Supp. 3d at 325.

Courts consistently recognize that assessing vicarious liability for TCPA violations is a fact-intensive inquiry inappropriate for resolution under Rule 56, let alone Rule 12(b)(6). *See e.g.*, *Kristensen*, 12 F. Supp. 3d at 1302 (denying motion to dismiss TCPA claims when plaintiff had sufficiently plead "a plausible agency relationship based on actual authority (arising through contractual relationships)").[1] The 2013 FCC Ruling held that called parties may obtain "evidence

---

[1] *See also Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June 12, 2014) (denying defendant's motion for summary judgment as to vicarious liability claim for violations of the TCPA's "junk fax" provisions); *McCabe v. Caribbean Cruise Line, Inc.,* No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (denying motion to dismiss TCPA vicarious liability claims); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) ("[S]ummary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal."); Creative Montessori Learning Ctr. v. Ashford Gear, LLC, No. 09 C 3963, 2014 U.S. Dist. LEXIS 27758 (N.D. Ill. Mar. 3, 2014); *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965, at *19 (E.D. Mich. Jan. 15, 2014) (denying plaintiff's motion because the "issue of agency turns on the control exercised" by the alleged principal, "which cannot be determined as a matter of law").

12

of these kinds of relationships … through discovery, if they are not independently privy to such information." 2013 FCC Ruling ¶ 46.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). Actual authority can be implied, through words or conduct. *Id.* § 2.01 cmt. b. The principal need only have the right to control the agent; the agency exists even if the principal does not exercise that right. *See Schutz v. Arrow Fin. Servs., LLC*, 465 F.Supp.2d 872, 877 (N.D. Ill. 2006).

Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c). A principal can make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

The fundamental principle of ratification is that one may not accept the benefits of a transaction without also bearing its legal consequences. Restatement (Third) of Agency § 4.07 cmt. b (2006). "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal. To be effective as a ratification, the principal's

13

assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." *Id.* § 4.01 cmt. b.  "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act." *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

Plaintiff's Complaint sufficiently states a claim  to hold QuoteWizard vicariously liable for the telemarketing conduct of its agents under each of the foregoing theories of vicarious liability. The Complaint alleges that QuoteWizard's marketing strategies involve using recorded messages and/or an artificial voice, QuoteWizard hired InfoWorx and First Call to telemarket on its behalf, QuoteWizard directed the telemarketing to Plaintiff and members of the class, QuoteWizard had the right to control manner and means of the telemarketing campaign, developed an integrated lead generation system by providing access to its systems, receiving and process leads in real time, and requiring the generation and retention of call recordings and alleged consent records, and accepted the benefits of its agents telemarketing with knowledge of the violations.  *See* ECF No. 1, ¶¶ 28, 30, 33, 34, 40, 46, 47.

These allegations, coupled with the factual allegations linking QuoteWizard to the call to Plaintiff, are sufficient to survive Defendant's Motion to Dismiss. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 829 (N.D. Ill. 2016) ("[I]n their amended consolidated complaint, plaintiffs repeatedly alleged that '[d]efendants and/or their agents made unsolicited telephone calls' in violation of the TCPA…. The bottom line is that defendants have been on notice since near the outset of the case that plaintiffs seek to hold them vicariously or jointly

14

liable, and that is all plaintiffs were required to do."). As other federal courts have held, the idea

that QuoteWizard, or any defendant, could simply hire a third party to physically dial the calls

and be absolved of liability is "absurd indeed". *See Birchmeier v. Caribbean Cruise Line, Inc.*,

No. 12 C 4069, 2012 U.S. Dist. LEXIS 182536, at *3 (N.D. Ill. Dec. 28, 2012) ("To offer an

example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next

to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to

consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious

dialer, would be liable and that A would get off scot-free. A Congressional enactment that

permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.") This

view of liability under the TCPA is entirely consistent with the Third Circuit's instruction that

"[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager

v. Dell Financial Services*, LLC, 727 F.3d 265, 271 (3d Cir. 2013) (citing *Lesher v. Law Offices

of Mitchell N. Kay, P.C.*, 650 F.3d 993, 997 (3d Cir. 2011)).

The Plaintiff's detailed allegations about the nature of the relationship go above what is

required at this stage. While denying a similar motion to dismiss, a court in the Middle District

of Pennsylvania held:

> Fannie Mae derides plaintiff's allegations as "only conclusory, boilerplate
> references to Resolve placing calls 'on behalf of' Fannie Mae." (Reply Br. at
> 11). Plaintiff's pleading, however, was more thorough and complete than Fannie
> Mae's quoting of it. Plaintiff avers that "Defendant Resolve left such voice
> messages on Plaintiff's cellular phone, on Defendant Fannie Mae and Defendant
> Green Tree's behalf, at their direction, and under their control," and "Defendant
> Resolve left multiple (subsequent) similar voice-messages on Plaintiff's cellular
> phone, Defendant Fannie Mae and Defendant Green Tree's behalf[sic], at their
> direction, and under their control." (Compl. ¶¶ 13, 15)(emphasis added). This
> pleading, by itself, is enough to state a claim, plausible on its face, that Fannie Mae
> is vicariously liable for the phone calls made by Resolve. See Ashcroft v. Iqbal,
> 556 U.S. at 678.

Moreover, these allegations are not mere "conclusions," as Fannie Mae asserts, because plaintiff included a transcript of the Resolve caller's voice message. That message stated that the speaker was calling "on behalf of Fannie Mae," and that "[h]elp from Fannie Mae is available but you must return our call." (Compl. ¶ 14). These facts certainly rise to the standard of "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level.

*Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703-04 (M.D. Pa. 2014). Like the Plaintiff in *Hartley-Culp*, the Plaintiff described the calls, including specific promotion of QuoteWizard. *See* ECF No. 1 at ¶¶ 16-19. Courts in this district have readily denied similar motion to dismiss for purported lack of various liability. *Abramson v. Agentra*, 2018 U.S. Dist. LEXIS 212285 * 12 (W.D. Pa, December 18, 2018) ("Abramson has sufficiently alleged that Agentra can be held liable for the conduct of the telemarketing companies with which it contracts"). As Judge Wolson held denying a similar motion:

> SAG has established that it outsources its telemarketing and authorizes those third-parties to enter into contract on its behalf. Those facts, however, could give rise to a plausible claim of vicarious liability, regardless of the label attached to the relationship that SAG has with its third-party vendor. *See Restatement (Third) of Agency § 2.01* (agent acts **[*4]** with actual authority when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act"). That conclusion is consistent with the Third Circuit's mandate that courts construes the TCPA broadly to effect its purpose. *See Gager v. Dell Fin. Svcs., LLC, 828 F.3d 265, 271 (3d Cir. 2013).*

*Newell v. Strategic Admin. Grp.*, No. 2:20-cv-00967-JDW, 2020 U.S. Dist. LEXIS 261006, at **3-4 (E.D. Pa. May 6, 2020).

At a minimum, through its conduct, in hiring InfoWorx and First Call to conduct the telemarketing to Plaintiff and members of the proposed class, QuoteWizard impliedly conveyed to these agents that their telemarketing efforts were authorized by QuoteWizard. *See e.g.*, *Clough v. Plymouth Rock Mgmt. Co. of N.J.*, Civil Action No. 21-19343 (JXN) (JBC), 2023 U.S. Dist.

16

LEXIS 231400, at *10-11 (D.N.J. Dec. 29, 2023) (allegations which substantiate an outsourcing arrangement to promote principal's goods or services support claim for vicarious liability).

As the one court observed, allegations that a third party reasonably believes an agent had authority to act and that belief is traceable to the principal's manifestation support a claim of apparent authority:

> Plaintiff sufficiently pleads Century 21's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory, including that realtors identified themselves as calling from "Century 21" during calls, that Century 21 provided instruction regarding call content and frequency, and that Century 21 facilitated realtors' access to lead lists and dialers to call them with (*i.e.*, Century 21 knew or should have known of realtors' TCPA violations and accepted the benefits of their calls anyway).

*Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616, at *11-12 (D.N.J. Oct. 21, 2019)

Mr. Abramson has also stated a claim of vicarious liability under a ratification theory. "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act." *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

The FCC has made clear that ratification applies to the TCPA. 2013 FCC Ruling ¶ 34 ("[A] seller may be liable for the [telemarketing] of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits."). "Ratification [of TCPA violations] occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions." *Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 831 (N.D. Ill.

2016). Ratification may occur even though the agent's acts were unauthorized by the principal. *Id.* at 833.

The cases cited by QuoteWizard (many out of Circuit) do not support dismissal of Mr. Abramson's vicarious liability claim against QuoteWizard, and indeed in many instances are highlight that Plaintiff has indeed stated a plausible claim of vicarious liability given the *absence of precisely the allegations* made in the operative Complaint. QuoteWizard's citation at page 15 of its Memorandum to *Dobkin v. Enter. Fin. Grp.*, is particularly curious as the motion to dismiss was denied in that case. The Dobkin court held that allegations principal directed and controlled telemarketing and agent directing call recipient to principal's website supported actual authority—without even the direct live transfer of the call to the principal which is the case here—supported a claim of vicarious liability. *Dobkin v. Enter. Fin. Grp.*, No. 2:14-cv-01989 (WHW) (CLW), 2014 U.S. Dist. LEXIS 123317, at *11-12 (D.N.J. Sep. 3, 2014).

Other examples of cases cited by QuoteWizard that undermine rather than support their position appear throughout their Memorandum. *Zarichny v. Complete Payment Recovery Servs., Inc.*, is entirely inapposite as the only allegation against the dismissed defendant was that it was the parent corporation of the debt collector who placed the allegedly violative call—there were simply no allegations of agency at all. "Even assuming Zarichny had sufficiently alleged that FIS is a debt collector, she does not allege that FIS enlisted CPRS to call her or that CPRS acted as FIS's agent in placing those telephone calls." 80 F.Supp.3d 610, 619 (E.D. Pa. 2015). Similarly, in *Klein v. Elite Med. Labs., Inc.* the court held that a pro se Plaintiff's claim against a doctor should be dismissed as there was no allegation that the doctor played any role in the calling:

> Plaintiff merely alleges that Defendant Arriviello "consulted" for Elite Medical Laboratories and/or Performance Laboratories (the companies who manufactured the genetic testing kits he received as a result of the robocalls) and was "their doctor." There is no allegation that Defendant

18

> Arriviello directed the callers to call Plaintiff on his behalf, or that
> Defendant Arriviello caused the callers to reasonably believe that they had
> the authority to call Plaintiff on Defendant Arriviello's behalf.

*Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 U.S. Dist. LEXIS 214802, at *13-14 (M.D. Pa. Dec. 13, 2019). "Here, Rogers similarly has not alleged any facts that support the inference that Postmates exercised any control over Bird Dog or Bird Dog's marketing campaign. Yet Rogers complaint is even more lacking: he doesn't even make the conclusory allegation of control." *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 LX 58584, at *13 (N.D. Cal. July 9, 2020); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 U.S. Dist. LEXIS 52328, at *16 (N.D. Cal. Mar. 28, 2018) (plaintiff wholly failed to allege that Yelp controlled the text messages and in fact demonstrated that restaurant defendant had exclusive control.)

QuoteWizard additionally cites to inapposite dismissals where, unlike the facts alleged by Mr. Abramson, there was no indication in the initial call that the principal was being promoted or where there was no direct transfer to the principal. *See Bank v. Vivint Solar*, No. 18-CV-2555 (MKB) (RLM), 2019 U.S. Dist. LEXIS 48033, at *10-11 (E.D.N.Y. Mar. 22, 2019) (no mention of the principal and no live transfer); *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 U.S. Dist. LEXIS 77294, at *2-3 (N.D. Cal. June 15, 2015) (no live transfer and no indication principal even knew about the calls).

Defendants' argument that there exists no act of "affirmance" of any prior act under a ratification theory holds no weight, as the QuoteWizard's conduct following the March 11, 2026 Demand Letter can itself be considered manifestation of assent to Inforworx and First Call's prior acts. MTD at 20. Upon hearing of the claims in this action, QuoteWizard continued to accept leads from the two co-defendants and even directed Infoworx to respond to the Demand. Complaint ¶46. This is precisely the type of conduct which demonstrates a party's consent to

prior acts and acquiescence to the jurisdiction of this Court, "whereby the act is given effect as if done by an agent acting with actual authority." *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405 at *6 (D.N.J. Nov. 20, 2018).

## CONCLUSION

For the foregoing reasons, QuoteWizard's Motion to Dismiss Count II of Plaintiff's Complaint should be denied.

Dated: June 29, 2026

Plaintiff,
By Counsel,

By: */s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

Edward A. Broderick
Broderick Law, P.C.
10 Hillside Avenue
Winchester, MA 01890
(617) 738-7080
ted@broderick-law.com
*Pro Hac Vice*

## Certificate of Service

I hereby certify that on June 29, 2026, I caused the foregoing to be filed with the Court's CM/ECF system which will effect service upon all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich