**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST CALL SOLUTIONS, LLC, INFOWORX DIRECT, LLC and QUOTEWIZARD.COM, LLC,<br><br>    Defendants. | Civil Action No. 2:26-cv-00916-RJC |

**DEFENDANT QUOTEWIZARD.COM, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS AND
IMMATERIAL AND PREJUDICIAL ALLEGATIONS**

NOW COMES Defendant QuoteWizard.com, LLC ("QuoteWizard"), pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 23, and hereby submits this Memorandum of Law in Support of QuoteWizard's Motion to Strike Class Allegations and Immaterial and Prejudicial Allegations.

**I.        INTRODUCTION**

In this action, Plaintiff Stewart Abramson ("Plaintiff") seeks to represent facially uncertifiable classes in a manner that discovery cannot cure. It is readily apparent that the process of determining who is a class member using Plaintiff's definitions will require potentially millions of individualized and disputed factual inquiries. Ultimately, there is no record or objective way to identify individuals who fit the criteria of Plaintiff's proposed class definitions. An analysis must be performed on a plaintiff-by-plaintiff and call-by-call basis to determine who fits Plaintiff's definitions of the "TCPA Prerecord Class" and the "TCPA Prerecord QuoteWizard Sub-Class." And when it is "obvious from the pleadings that the proceeding cannot possibly move forward on

a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).

At the same time, Plaintiff's class definitions presuppose liability, such that those who fit Plaintiff's definitions necessarily have valid claims against QuoteWizard (and the other Co-Defendants). "A 'fail-safe class' 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim on the merits.'" *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 13 (D. Mass. 2018), *quoting Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012), aff'd, 12 F.4th 81 (1st Cir. 2021). Where one who fits either of Plaintiff's class definitions prevails on the merits before QuoteWizard can even defend or try the case, the definition—a fail-safe—is improper and should be stricken.

This Court must strike the class allegations here. On the one hand, Plaintiff's proposed definitions effectively allow individualized issues to predominate commonality. On the other hand, class membership depends on a determination of the merits. For these reasons and those below, the class allegations must be stricken as circular and impermissible under Fed. R. Civ. P. 23.

At the same time, Plaintiff asserts numerous immaterial allegations that have no bearing, whatsoever, on the claims in this lawsuit. By way of example, without detailing how, if at all, there are similarities among the lawsuits, Plaintiff alleges that QuoteWizard settled a certified class action for $19,000,000 in another venue. Plaintiff also alleges that QuoteWizard "is no stranger to TCPA violations." These allegations serve no purpose other than to prejudice QuoteWizard, and, accordingly, they should be stricken from the pleading.

## II.    FACTUAL BACKGROUND

Plaintiff filed this putative class action on May 14, 2026.  *See* Docket Entry No. 1 (the "Complaint").  Count I of the pleading is a claim against Co-Defendants First Call Solutions, LLC ("First Call") and Infoworx Direct, LLC ("Infoworx") for purported violations of 47 U.S.C. § 227(b).  *Id.* at ¶¶ 58-63.  In Count II of his pleading, Plaintiff asserts a claim against QuoteWizard for purported violations of 47 U.S.C. § 227(b).  *Id.* at ¶¶ 64-69.  The Complaint alleges that this action involves a campaign by QuoteWizard "whose agents First Call … and Infoworx … made telemarketing calls to residential phone numbers using a prerecorded or artificial voice…"  *Id.* at ¶ 1.  According to Plaintiff, he "received six telemarketing calls that used an artificial, prerecorded voice which came on the line after a pause and audible click, promoting QuoteWizard's goods or services."  *Id.* at ¶ 16.  Plaintiff alleges that, "[a]fter interacting with the artificial voice, in each of the calls, a live agent came on the line and transferred [Plaintiff] directly to QuoteWizard, who offered to connect [Plaintiff] with an insurance company to provide him with insurance."  *Id.* at ¶ 17.  According to Plaintiff, the calls occurred on January 13, 2026; January 15, 2026; February 4, 2026; March 16, 2026; March 18, 2026; and March 26, 2026.  *Id.* at ¶ 18.

The Complaint alleges that Plaintiff wrote to QuoteWizard on March 11, 2026 regarding the foregoing conduct, both via mail and e-mail (the "Demand Letter").  *See* Complaint at ¶ 22. Plaintiff contends that, in response to the Demand Letter that he sent to QuoteWizard, Plaintiff "received an email from Ronald Perlstein who identified himself as the owner of Infoworx, stated that Infoworx was an affiliate of QuoteWizard and that QuoteWizard had asked him to respond to [Plaintiff]."  *Id.* at ¶ 23.  Plaintiff alleges that "Mr. Perlstein admitted that Infoworx and its affiliate First Call Solutions sent the calls to QuoteWizard."  *Id.* at ¶ 24.  Plaintiff baldly asserts that, "[b]ecause Infoworx and First Call were able to transfer [Plaintiff] directly to a QuoteWizard

agent, Infoworx and First Call were granted access to QuoteWizard's computer systems as a result of [*sic*] preexisting commercial arrangement." *Id.* at ¶ 30.

The Complaint is devoid of any allegation that Perlstein represented that QuoteWizard directed the alleged affiliates to telemarket to Plaintiff. *See* Complaint, generally. Nonetheless, Plaintiff jumps to the conclusion that, because QuoteWizard allegedly asked Infoworx to respond to the March 11, 2026 Demand Letter, then QuoteWizard, somehow, directed the earlier calls to be sent to QuoteWizard. *Id.* at ¶¶ 23-24. The Complaint does not, in any way, elaborate upon how Plaintiff formed this conclusion. *Id.*, generally. Nonetheless, Plaintiff alleges that "QuoteWizard is legally responsible for ensuring that Inforworx [*sic*] and First Call were legally compliant with the TCPA in placing calls on its behalf," and that "Inforworx [*sic*] and First Call, at the direction of QuoteWizard, telemarketed to Plaintiff and members of the class." *Id.* at ¶¶ 32-33.

Without laying out a factual foundation concerning the relationship between the Co-Defendants, Plaintiff concludes that "QuoteWizard donned Infoworx and First Call with apparent authority to make the telemarketing calls at issue." *See* Complaint at ¶ 35. And again, relying solely on the response to the March 11, 2026 Demand Letter, Plaintiff contends that (i) "QuoteWizard designated Inforworx [*sic*] and First Call to generate leads for it, which Inforworx [*sic*] and First Call did via automated telemarketing using an artificial voice," and (ii) "Infoworx and First call [*sic*] are the agents of QuoteWizard for purposes of the telemarketing at issue." *Id.* at ¶¶ 39, 41. Plaintiff again jumps to the legal conclusion that "QuoteWizard ratified the unlawful telemarketing conduct by, inter alia, directing Infoworx to respond to Plaintiff's complaint, reviewing and retrieving call recordings and purported consent records, and continuing to accept and benefit from leads generated by Infoworx and First Call despite knowledge of TCPA violations." *Id.* at ¶ 46. Under Plaintiff's logic, these vague and conclusory allegations

demonstrate that "QuoteWizard had the right to control, and did control, the manner and means of the telemarketing campaign, including by providing access to its systems, receiving and processing leads in real time, and requiring the generation and retention of call recordings and alleged consent records." *Id.* at ¶ 47.  The Complaint alleges that "the acts of Infoworx and First Call in placing the calls at issue are attributable to QuoteWizard under principles of actual authority, apparent authority, and/or ratification." *Id.* at ¶¶ 10, 64-69.

In addition to his individual claims against QuoteWizard, Infoworx, and First Call, Plaintiff purports to assert claims against the Co-Defendants on behalf of two putative classes.  As purported grounds for Counts I and II, the former of which is brought on behalf of Plaintiff and a proposed TCPA Prerecord Class, and the latter of which is brought on behalf of Plaintiff and a proposed TCPA Prerecord QuoteWizard Sub-Class, Plaintiff alleges that "Defendants operated an integrated lead generation system whereby Infoworx and First Call generated consumer leads through telemarketing and transferred those leads directly to QuoteWizard, which immediately monetized such leads by connecting consumers with insurance providers." *See* Complaint at ¶ 48.  In his pleading, Plaintiff proposes the following classes:

> **Telephone Consumer Protection Act Prerecord Class**:  All persons in the United States: (1) to whom First Call Solutions, LC or Infoworx Direct, LLC, or any third party acting on their behalf (2) made one or more non-emergency calls for a commercial purpose, (3) to their residential telephone number, (4) using an artificial or prerecorded voice (5) from the four years prior to the filing to he complaint through the date of trial.

> **Telephone Consumer Protection Act Prerecord QuoteWizard Sub-Class**:  All persons in the United States: (1) to whom First Call Solutions, LLC or Infoworx Direct, LLC, or any third party acting on their behalf (2) made one or more non-emergency calls' [*sic*] (3) to their residential telephone number, (4) promoting QuoteWizard's goods and/or services (5) using an artificial or prerecorded voice (6) from the four years prior to the filing of the complaint through the date of trial.

*Id.* at ¶ 50.

Although unrelated to his claims, Plaintiff alleges that (1) "[t]housands of people have complained to QuoteWizard about telemarketing by QuoteWizard or its affiliates and vendors," (2) "QuoteWizard is no stranger to TCPA violations," and, perhaps most notably, (3) "[QuoteWizard] settled a certified class action in the District of Massachusetts of Massachusetts [*sic*] for $19,000,000. *Mantha v. QuoteWizard.com, LLC*, D. Mass. C.A. 1:19-cv-12235-LTS, ECG 397 (September 29, 2025)." *Id.* at ¶¶ 42-44.

### III.   LEGAL STANDARD

Fed. R. Civ. P. 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002), *citing Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002). While motions to strike are not favored, they will be granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Garlanger*, 223 F.Supp.2d at 609, *quoting Tonka Corp. v. Rose Art Industries, Inc.*, 836 F.Supp. 200, 217 (D.N.J. 1993).

A class action must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning*, 725 F.3d at 59, *citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A class action must satisfy all four requirements set forth in Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as at least one of the requirements of Fed. R. Civ. P. 23(b). "Failure to fulfill these requirements can signal the inappropriateness of a class action status as a procedure to obtain relief in a given case." *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, *7 (D. Mass. Feb. 2, 2021). "If it is obvious from the pleadings that the proceeding

cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning*, 725 F.3d at 59; *see also Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *5 (C.D. Cal. Feb. 11, 2019).

Decisions on class certification should be made "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[E]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."); *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817, 829 (N.D. Ill. 2013) ("The rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23.").

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *See*, *e.g.*, *Brazil v. Dell Inc.*, 585 F.Supp.2d 1158, 1166-67 (N.D. Cal. 2008). Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *see also Yagman v. Allianz Ins.*, No. LA CV15-00921 JAK (JCX), 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pretrial proceedings"). In this case, Plaintiff's proposed class definitions are impermissibly overbroad, such that they necessarily call for millions of individualized inquiries and will cause the Parties to incur enormous discovery costs. By all

accounts, this Court should exercise its inherent powers and strike the classes because they are facially uncertifiable.

### IV.    ARGUMENT

Plaintiff's class allegations must be stricken because, as defined by Plaintiff, the TCPA Prerecord QuoteWizard Sub-Class and the TCPA Prerecord Class lack commonality. "The commonality requirement [of Fed. R. Civ. P. 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009), *quoting* Fed. R. Civ. P. 23(a)(2).  A class that lacks commonality is not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-78 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (internal citations omitted).  In this case, given the overbreadth of Plaintiff's definitions, it is impossible for commonality to exist because the TCPA Prerecord QuoteWizard Sub-Class and the TCPA Prerecord Class require individual assessments of potentially millions of calls and persons.

Commonality requires more than simply whether class members have suffered a violation of the same provision of law. *Controllable On-Site Prot. Sec. Sys., Inc. v. Telular Corp.*, No. 4:14CV00487 JM, 2016 WL 11778133, at *2 (E.D. Ark. Apr. 12, 2016) (*quoting Wal-Mart Stores, Inc.*, 564 U.S. at 338) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' [internal citation omitted].  This does not mean merely that they have all suffered a violation of the same provision of law.").  "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 699 F.3d at 815, *quoting Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  In other words,

there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart Stores, Inc.*, *supra*, 564 U.S. at 349. Plaintiff's class allegations fail to assert a common contention among the purported members' claims.

### a. *Individual Issues Predominate Commonality In the Proposed Class*

Plaintiff's claims arise under 47 U.S.C. § 227(b), which provides that it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B); *see also* Complaint at ¶¶ 58-69.

The scope of the TCPA is limited in several ways of central relevance here. Under 47 C.F.R. § 64.1200(a)(2), an entity cannot make any such call "other than a call made with the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2). At the same time, to invoke liability, the communication at issue must "constitute[] telemarketing." 47 C.F.R. § 64.1200(a)(2). Further, a prerecorded call is only actionable if it actually plays. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("[M]aking a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must 'speak' during the call."). And calls to cellular phones must actually go through the network to trigger potential TCPA liability. *See* 47 U.S.C. § 227(b)(1)(A) (regulating only calls that are actually "ma[d]e" as opposed to "initiated"); *Ybarra*, 807 F.3d at 640; *Bank v. Dorfman*, No. 18CV6457MKBST, 2021 WL 7185786, at *7 (E.D.N.Y. Dec. 21, 2021), report and recommendation adopted, No. 18CV6457MKBST, 2022 WL 341195 (E.D.N.Y. Feb. 4, 2022) ("the ordinary meaning of 'making a call' is performing the actual act that connects your telephone to another."). It follows that there are—at the very least—three specific inquiries that must be

made to determine whether an alleged prerecorded call or message violated the TCPA, including whether the communication was made with the recipient's consent, whether the communication constituted telemarketing, and whether the communication was actually made.

"Telemarketing," under the TCPA, is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). "To determine whether a message's purpose fits this statutory definition, courts must analyze the communication's content and context, along with applying a 'measure of common sense.'" *Andersen v. Nexa Mortgage, LLC*, 2024 WL 3762098 (D. Cal. Aug. 12, 2024), *quoting Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Relatedly, "an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044-45 (9th Cir. 2017) ("the transactional context matters in determining the scope of a consumer's consent").

In the Complaint, there are six proposed prongs that each purported member of the TCPA Prerecord QuoteWizard Sub-Class must fit: (1) First Call or Infoworx, or any third-party acting on their behalf, must have called the class member, (2) the call(s) must have been for a non-emergent purpose, (3) the call(s) must have been made to their residential phone number, (4) the call(s) must have promoted QuoteWizard's goods and/or services, (5) the call(s) must have used an artificial or prerecorded voice, and (6) the call(s) must have been made from the four years prior to the filing of the Complaint through the date of trial. *See* Complaint at ¶ 50. Similarly, there are five (5) proposed prongs that each purported member of the TCPA Prerecord Class must fit: (1) First Call or Infoworx, or any third-party acting on their behalf, must have called the class member, (2) the call(s) must have been for a non-emergent and commercial purpose, (3) the call(s) must have been

made to their residential phone number, (4) the call(s) must have used an artificial or prerecorded voice, and (5) the call(s) must have been made from the four years prior to the filing of the Complaint through the date of trial. *Id.* at ¶ 50. Identifying individuals who satisfy all six criteria of the TCPA Prerecord QuoteWizard Sub-Class and all five criteria of the TCPA Prerecord Class reveals a host of individualized issues with no common resolution or evidence.

To identify a class member based on Plaintiff's definitions requires starting with a list of calls using a prerecorded or artificial voice that First Call, Infoworx, or any third-party acting on their behalf, sent to residential telephone numbers concerning—generally—commercial purposes or QuoteWizard's goods or services. But even then, responsive calls may not fit into the definition of "telemarketing" at all. The content of the messages would need to be independently reviewed to determine which, if any, constitute telemarketing—a review that prevents a finding of commonality. *See Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016) (denying certification where "even assuming *arguendo* that some calls had a telemarketing purpose, the question cannot be answered by reference to common, classwide evidence.").

Courts look at the critical common issues in a TCPA case in assessing commonality. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 326-27 (5th Cir. 2008). There are no common means to identify which numbers received calls that fall outside the realm of telemarketing—and Plaintiff's definitions do not account for the content of the calls in dispute. Even if it were possible to identify consumers who satisfy each of these prongs through common evidence (it is not), each such person would be subject to multiple individualized defenses including, (i) whether the class member consented to receive any of the calls that were made, (ii) whether subsequent communications sent by the Co-Defendants, or third parties acting on their behalf, were in

response to inquiries from the consumer and thus not solicitations or violative of the TCPA, and (iii) whether every single call made to each member constituted telemarketing.  The variation in the content of potentially hundreds of thousands of individualized communications will require individualized assessments that will undoubtedly overwhelm common questions.

Under Plaintiff's framework, the fact finder will need to hear individualized evidence regarding millions of calls sent between the Co-Defendants, and any third-parties acting on their behalf, and potential members of the nationwide classes to determine (1) whether the content of each call constituted "telemarketing" under the TCPA, and (2) whether any communication establishes that the class member previously consented to receiving messages from the Co-Defendants, or any third-parties acting on their behalf, and/or provided permission to send future communications.  If it was possible to identify class members through common evidence, the volume of individual fact issues to be litigated to determine liability still would be overwhelming. QuoteWizard has a due process and statutory right to pursue all defenses, including by presenting evidence on a plaintiff-by-plaintiff basis, and to have these issues tried.  That can only be done through an individualized inquiry specific to each class member, which, in light of Plaintiff's class definitions, defeats the purpose of the class action device and renders the litigation unmanageable. These varied and member-specific inquiries make it impossible to find a common contention that could drive the resolution of liability for all class members "in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

A plaintiff must "show 'that the questions of law and fact common to class members predominate over any questions affecting only individual members.'"  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (citation omitted).  In assessing predominance, "the court must make a rigorous assessment of the available evidence and the method or methods by which

plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (quotation marks omitted). Simply, individual issues related to QuoteWizard's defenses will overwhelm the litigation process because, if the class definitions are not stricken, the Court will be forced to engage in potentially thousands of mini-trials to determine who is in the classes and to determine the merits of each members' claim based on the individualized content and context of their communications with the Co-Defendants and any third-parties acting on their behalf, separate and apart from threshold individualized issues of consent.

Additionally, only individuals who suffer actual Article III harm may recover damages at trial. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021). As a result, a class definition is properly stricken where class members have not suffered Article III harm as a result of the alleged misconduct. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 152 (3d Cir. 2023) (vacating class certification where there was no evidence that any class member suffered harm); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (vacating class certification order where unnamed class members would have to submit individualized evidence of their standing); *Barnes v. Allsup Emp. Servs., LLC*, No. 21-CV-21121, 2022 WL 2390715, at \*7 (S.D. Fla. July 1, 2022) (denying class certification based upon the plaintiff's inability to prove Article III standing across the class).

While QuoteWizard vehemently denies that it violated the TCPA, a violation of a law that does not result in the harm to a substantive right, but merely a procedural protection designed to protect that right, does not cause Article III harm. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("When a legislature has enacted a 'bare procedural' protection, a plaintiff cannot satisfy the demands of Article III by pointing only to a violation of that provision, but also

must link it to a concrete harm.") (internal citations and quotations omitted).  The U.S. Supreme Court holds that sterile statutory violations that do not cause real world harm cannot give rise to Article III harm.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (stating that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation.").  Denying certification of a class, the *Barnes* court reasoned:

> As Defendant correctly points out, whether other putative class members received multiple phone calls or one phone call is unclear and will require an individualized inquiry.  One unanswered phone call that resulted in a voicemail would be insufficient to establish an injury-in-fact, but multiple unanswered phone calls resulting in multiple voicemails would be sufficient to establish an injury-in-fact.

*Barnes*, 2022 WL 2390715, at *5.

Ultimately, identifying class members who suffered Article III harm in this suit raises further individualized issues.  QuoteWizard is entitled to raise its affirmative defenses of all of these individualized issues with respect to each member of the TCPA Prerecord QuoteWizard Sub-Class and the TCPA Prerecord Class.  *See Wal-mart Stores, Inc.*, 564 U.S. at 367 (reversing certification because class action defendant is "entitled to litigate its statutory defenses to individual claims); *see also Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *4 (E.D. Cal. 2009) ("Given the numerous individualized inquiries required … any attempt to try these claims on a classwide basis would deprive Defendants of their due process right to a fair trial, including the right to present 'every available defense'").  In this case, evaluating the issue of consent, content, and harm will require individualized reviews of millions of calls, such that there is no common evidence available to make Plaintiff's proposed definitions manageable.

Rule 23(b)(2) requires that QuoteWizard "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  While Rule 23(b)(2) does not contain predominance requirements, a class under Rule 23(b)(2) must not be "overrun with individual issues" and must still be cohesive.  *Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005).  Because Rule 23 cannot be interpreted to "abridge, enlarge, or modify any substantive right,' 28 U.S.C. § 2072(b), [] a class cannot be certified on the premise that [QuoteWizard] will not be entitled to litigate its statutory defenses to individual claims."  *Wal-mart Stores, Inc.*, 564 U.S. at 367 (citation omitted).

Allowing overbroad classes to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action."  *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who suffered no injury"); *Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.") (*citing DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at *7 (S.D. Ind. Mar. 31, 2015)).  This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation.  *See* 47 U.S.C. § 227; *see also Kohen*, 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.").  Where this Court "may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23, the Court here should strike the class allegations in this lawsuit.  *Hill*, 946 F.Supp.2d at 829.

### b. *The Immaterial and Inflammatory Allegations Should Likewise Be Stricken*

Plaintiff's allegation that QuoteWizard settled an unrelated class action has no bearing, whatsoever, on the instant litigation. A "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). And again, "[t]he purpose of a motion to strike is to clean up the pleadings, streamline litigation, *and avoid unnecessary forays into immaterial matters*." *McInerney*, 244 F.Supp.2d at 402, *citing Garlanger*, 223 F.Supp.2d at 609 (emphasis added). Here, Plaintiff alleges that (1) "[t]housands of people have complained to QuoteWizard about telemarketing by QuoteWizard or its affiliates and vendors," (2) "QuoteWizard is no stranger to TCPA violations," and (3) "[QuoteWizard] settled a certified class action in the District of Massachusetts of Massachusetts [*sic*] for $19,000,000. *Mantha v. QuoteWizard.com, LLC*, D. Mass. C.A. 1:19-cv-12235-LTS, ECG 397 (September 29, 2025)." *See* Complaint at ¶¶ 42-44. None of these three allegations serve any purpose other than to paint QuoteWizard in a bad light: these allegations have no bearing on whether QuoteWizard is liable for the claims advanced in this action. It would be unnecessary and prejudicial to allow the subject allegations to remain in the pleading and otherwise permit discovery to be conducted in connection with them.

### V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff's proposed class definitions constitute impermissible fail-safe classes and otherwise requires potentially millions of individuals inquiries to determine who may be a class member, and Plaintiff incorporates immaterial and otherwise scandalous and unnecessary allegations. QuoteWizard respectfully requests that this Court strike Plaintiff's class allegations to prevent the pursuit of an uncertifiable class, and strike ¶¶ 42-45 of the Complaint.

Respectfully Submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP,**

*/s/ Kevin P. Polansky*
Kevin P. Polansky (Admitted *Pro Hac Vice*)
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4720
Facsimile: (617) 217-4710
kevin.polansky@nelsonmullins.com

***Counsel for Defendant QuoteWizard.com, LLC***

Date: July 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: July 2, 2026                      */s/ Kevin P. Polansky*
                                         Kevin P. Polansky (Admitted *Pro Hac Vice*)