**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CALL SOLUTIONS, LLC, INFOWORX DIRECT, LLC and QUOTEWIZARD.COM, LLC,<br><br>Defendants. | Civil Action No. 2:26-cv-00916-RJC |

**REPLY IN SUPPORT OF DEFENDANT QUOTEWIZARD.COM, LLC'S
MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Pursuant to The Honorable Judge Colville's Standing Order and Procedures Re: Civil Motion Practice, Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby submits this brief Reply in Support of its Motion to Dismiss Count II of Plaintiff's Complaint to address limited matters raised in the Opposition filed by Plaintiff Stewart Abramson ("Plaintiff").

**I.   Plaintiff Relies On Both Inapposite Case Law And Authority Supporting The Relief Sought By QuoteWizard**

Plaintiff heavily relies on cases that he previously filed in an effort to prevail at the dismissal stage; however, the facts of those cases are distinguishable from the facts currently before the Court.  And perhaps most notably, in one of those cases, this very Court (Cohill, J.) dismissed a defendant who purportedly acted in the same manner that Plaintiff alleges QuoteWizard acted here. *See Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-CV-00435, 2014 WL 2938626, at *5 (W.D. Pa. June 30, 2014).  In *Caribbean Cruise Line*, Judge Cohill dismissed the defendant from the suit because (i) the defendant did not place the call, (ii) the defendant was

not mentioned in the call, and (iii) Plaintiff's pleading "only proves that [the defendant] earns money from transactions processed, not that they initiated the call." *Id.*, at *5.  As a result, this Court held that, "[s]imply put, Plaintiff's allegations with respect to [the defendant] *are too attenuated and speculative to survive a Rule 12(b)(6) Motion of Dismissal*." *Id.*, at *5 (emphasis added).  It follows that this Court's ruling in *Caribbean Cruise Line* supports a finding that QuoteWizard should be dismissed from the instant action.

In the same vein, in *Abramson v. CWS Apartment Homes, LLC*, Plaintiff alleged that the movant "sent a telemarketing text message to [Plaintiff's] cell phone" and was therefore on the hook for TCPA liability.  *Abramson v. CWS Apartment Homes, LLC,* No. CV 16-426, 2016 WL 6236370, at *1 (W.D. Pa. Oct. 24, 2016).  Although the movant prevailed at this dismissal stage, Plaintiff did not, whatsoever, allege that the movant directed another entity to place the telemarketing text message at issue.  Put differently, QuoteWizard and the movant in *CWS Apartment Homes, LLC* are not in the same shoes because, according to Plaintiff, QuoteWizard directed other entities to place the calls here, and the movant in *CWS Apartment Homes, LLC* personally made the calls at issue.  For *CWS Apartment Homes, LLC* to have any influence on the pending motion, the case would have to involve facts akin to those in Plaintiff's pleading in this action, which it does not.

Similarly, in *Abramson v. Agentra, LLC*, Plaintiff alleged that the movant "use[d] telemarketing to 'promote its products and solicit new clients.'" *Abramson v. Agentra, LLC*, No. CV 18-615, 2018 WL 6617819, at *3 (W.D. Pa. Dec. 18, 2018).  Addressing this specific allegation—that the movant engaged in telemarketing "to promote its products and solicit new clients,"—the Court held that Plaintiff alleged a plausible claim of TCPA liability.  *Id.*, at *3.  In the current case, however, Plaintiff does not allege that QuoteWizard engaged in the purported

telemarketing to promote its products or solicit new clients. *See* Complaint, generally. In fact, even if such an allegation was incorporated in the pleading, it would nonetheless fail because QuoteWizard does not sell goods and services. Regardless, the fact remains that, despite Plaintiff's reliance on cases he personally filed to justify surviving the dismissal stage, the pertinent facts of those cases starkly contrast or are otherwise distinguishable from those currently before the Court.

**II.    Neither Plaintiff's Complaint Nor His Opposition Detail The Purported Relationship Among The Defendants**

While Plaintiff's reliance on the foregoing case law alone underscores the weakness of his argument, his position is further undermined by his conspicuous failure to address the critical issue at the heart of the underlying motion: Plaintiff's failure to plead how Infoworx's response to the Demand Letter demonstrates that QuoteWizard controlled the calls at issue. According to Plaintiff, he sent the Demand Letter to QuoteWizard in March 2026, and in response, Plaintiff "received an email from Ronald Perlstein who identified himself as the owner of Infoworx, stated that Infoworx was an affiliate of QuoteWizard and that QuoteWizard had asked him to respond to [Plaintiff]." *See* Complaint ¶¶ 22-23. Plaintiff alleges that "Mr. Perlstein admitted that Infoworx and its affiliate First Call Solutions sent the calls to QuoteWizard." *Id.* at ¶ 24. Based on that sole allegation, Plaintiff leaps to the conclusion that, "[b]ecause Infoworx and First Call were able to transfer [Plaintiff] directly to a QuoteWizard agent, Infoworx and First Call were granted access to QuoteWizard's computer systems as a result of [*sic*] preexisting commercial arrangement." *Id.* at ¶ 30. Looking strictly at the four corners of the Complaint, there is no explanation linking the response to the Demand Letter to the alleged access to QuoteWizard's computer systems. Nonetheless, Plaintiff claims that QuoteWizard must have directed and controlled the Co-Defendants.

As Plaintiff correctly acknowledges, "[i]n order to satisfy the pleading requirements … [Plaintiff] must plausibly allege that [the Co-Defendants] w[ere] acting as … agent[s] of [QuoteWizard], i.e that [QuoteWizard] exercised control over, ratified or openly authorized [their] actions." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020).  To that end, Plaintiff relies on *Kristensen v. Credit Payment Servs.* to support his argument that he plausibly alleges an agency relationship in his pleading.  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014); *see also* Opposition at p. 12.  But in *Kristensen*, the pleading alleged that the defendant contracted with a certain entity, "who in turn contracted with [another] entity," and the latter entity "directed another entity to send a text message to multiple persons." *Kristensen*,12 F. Supp. 3d at 1302.

Plaintiff's pleading in this action contains no such allegations, notwithstanding his argument that he "go[es] above what is required at this stage."  It remains entirely unclear how, if at all, QuoteWizard is related to the Co-Defendants and can otherwise be on the hook for vicarious liability.  If Plaintiff can survive the dismissal stage by merely alleging that QuoteWizard directed another entity to respond to a letter, then litigants everywhere can easily manufacture jurisdiction in TCPA actions and engage in costly litigation.  The law requires far more than such attenuated and unsupported conjecture.  By all accounts, where Plaintiff fails to articulate in any meaningful fashion the relationship among the Co-Defendants, the Complaint, on its face, does not plausibly allege that QuoteWizard directed them in any manner.

## III.  <u>Conclusion</u>

WHEREFORE, for the reasons stated herein and in the underlying Motion and Memorandum of Law, QuoteWizard respectfully requests that this Court dismiss Count II of the Complaint, to the extent that claim concerns QuoteWizard, with prejudice.

Respectfully Submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP,**

*/s/ Kevin P. Polansky*
Kevin P. Polansky (Admitted *Pro Hac Vice*)
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4720
Facsimile: (617) 217-4710
kevin.polansky@nelsonmullins.com

***Counsel for Defendant QuoteWizard.com, LLC***

Date: July 6, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: July 6, 2026          */s/ Kevin P. Polansky*
                              Kevin P. Polansky (Admitted *Pro Hac Vice*)